UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

DIRK ALAN LONGSTRETH

    Debtor.

Case No. 20-03794-swd
Chapter 13
Hon. Scott W. Dales

---

RICHARD BREZA, KEN TUFTE, and
RESTAURANT RECYCLING, LLC,

    Plaintiffs,

v.

DIRK ALAN LONGSTRETH,

    Defendant.

Adv. Pro. No.

---

Brendan G. Best (P66370)
William L. Thompson (P80123)
VARNUM LLP
Attorneys for Plaintiffs
160 W. Fort St., 5th Floor
Detroit, MI 48226
(313) 481-7300

---

## PLAINTIFF'S COMPLAINT SEEKING DETERMINATION OF NONDISCHARGEABILITY OF DEBT

NOW COME Plaintiffs Richard Breza ("Breza"), Ken Tufte ("Tufte"), and Restaurant Recycling, LLC ("RR") (Breza, Tufte and RR, the "Plaintiffs"), by and through their counsel, Varnum LLP, pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(2)(A) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 4007 and 7001(6), and hereby state as their *Complaint Seeking Determination of Nondischargeability of Debt* ("Complaint") against Debtor/Defendant Dirk Longstreth ("Defendant"), as follows:

17499186.2

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs Breza and Tufte are Minnesota residents.

2. Plaintiff RR is a Minnesota limited liability company, with a physical address at 616 Industrial Drive, Fremont, MI 49412.

3. Upon information and belief, Defendant resides at 10088 Arbogast Road, Morley, Michigan 49336.

4. Upon information and belief, Defendant is a director, officer, employee, and/or the sole shareholder of Central Michigan Grease, Inc. ("CMG"), with a physical address at 350 W. 112th, Grant, MI 49327.

5. On December 31, 2020, the Defendant filed a Voluntary Petition for relief under Chapter 13 of the Bankruptcy Code ("Code"), thus commencing the underlying bankruptcy proceeding and seeking a discharge of certain debts.

6. Plaintiffs commence this adversary proceeding under Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure and 11 U.S.C. §§ 523(a)(4) and 523(a)(2)(A) of the Code seeking a determination of nondischargeability of debts and liability.

7. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

8. Venue is proper in this district by virtue of 28 U.S.C. § 1409(a) as this proceeding arises in and relates to a case under the Code pending in this district.

9. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I). Plaintiffs consent to entry of a final order or judgment by the Court.

## FACTUAL BACKGROUND

### A. Entities Involved

10. RR is a board-managed limited liability company. Plaintiffs Breza and Tufte and Defendant each individually own a 1/3 membership interest in RR. RR was in the commercial recycling business. RR purchased various fats which include soy oil and used fryer grease from restaurants and then it processes, filters, blends, and resells the recycled fats to livestock feed mills where it is ultimately mixed with other ingredients for livestock feed.

11. In his roles as "Chief Manager/President" and member of RR, Defendant was the individual charged with overseeing the day-to-day business operations of RR.

12. Plaintiffs Breza and Tufte were the individuals frequently called upon to provide RR with cash infusions and loans.

13. On or around March 10, 2018, Defendant formed CMG as a Michigan limited liability company.

### B. Central Michigan Grease's Improper Competition with Restaurant Recycling

14. Upon information and belief, Defendant used his dual roles as Chief Manager/President of RR and director, officer, employee, and/or sole shareholder of CMG to compete directly with RR.

15. On or around March 22, 2018, at Defendant's direction, CMG began selling products to RR's customers, purchasing products from RR's vendors, and utilizing RR's plant, trucks, trailers, assets, employees, and equipment without informing Plaintiffs Breza and Tufte or obtaining their consent.

16. Defendant took RR's equipment and placed CMG's logos over the RR logos.

17. CMG then used RR's equipment as its own, to process grease into a profitable biproduct.

18. CMG also converted other property and equipment of RR's for its own improper use including, but not limited to: (i) RR's customer relationships; (ii) RR's funds and finances; (iii) RR's proprietary business information; and (iv) the employees of RR.

19. From March 22, 2018 to October 11, 2019, CMG's sales to Kalmbach Feeds, Inc. were a usurpation of RR's opportunities because CMG received $319,688.96 in payments from RR's customer.

20. From April 10, 2018 to February 5, 2020, CMG's sales to Poll FARMS, Inc. were a usurpation of RR's opportunities because CMG received $282,139.47 in payments from RR's customer.

21. From May 30, 2018 to January 25, 2019, CMG's sales to Ceres Solutions Cooperative, Inc. were a usurpation of RR's opportunities because CMG received $209,991.20 in payments from RR's customer.

22. From October 18, 2019 to January 24, 2020, CMG's sales to Fairway Dairy & Ingredients, LLC were a usurpation of RR's opportunities because CMG received $199,266.60 in payments from RR's customer.

23. RR bought used cooking oil from Third Coast Commodities, LLC and sold the product to Saint Paul Commodities, under the direction of the Defendant. CMG subsequently did the same, which resulted in RR losing the business relationships with both companies.

24. Defendant and CMG have received the revenue from selling product to RR's customers while using RR's assets equipment, plant, and personnel.

25. Defendant also fraudulently charged RR for services relating to the servicing of CMG's 2012 Freightliner Cascadia at Valley Truck Parts.

### C.   Plaintiffs' and Restaurant Recycling's Damages

26. Defendant' and CMG's actions have resulted in RR losing more than $1,000,000.00 in revenue by Defendant and CMG selling to RR's clients while utilizing RR's plant, equipment, truck, trailer, assets, and employees.

27. As of the date of this Complaint, Plaintiffs Breza and Tufte have incurred $74,043.75 in reasonable and necessary attorneys' fees in pursuing litigation against Defendant and CMG.

28. As of the date of this Complaint, Plaintiffs Breza and Tufte have also incurred $9,735.07 in costs in this matter.

29. This Complaint requests that this Court declare any damages or liability that have or may arise from the transactions in relation to Defendant's actions on behalf of CMG to be nondischargeable.

## DETERMINATION OF NONDISCHARGEABILITY

### Count I
### 11 U.S.C. § 523(a)(4) Defalcation While Acting in a Fiduciary Capacity

30. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

31. Pursuant to 11 U.S.C. § 523(a)(4) of the Bankruptcy Code, "a discharge under [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity. . . ."

32. A defalcation involves an intentional wrong, "bad faith, moral turpitude, or other immoral conduct. . . ." *Bullock v. BankChampaign, NA*, 569 US 267, 274 (2013).

33. "The court must except a debt from discharge if the creditor establishes that the debt arises from 'defalcation' when there is (1) a pre-existing fiduciary relationship; (2) a breach of that relationship; and (3) a resulting loss." *Board of Trustees v. Bucci* (*In re Bucci*), 493 F.3d 635, 642 (6th Cir. 2007).

34. "In order for a fiduciary relationship to exist, there must be an express or technical trust." *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 331 (1934).

35. There was a pre-existing fiduciary relationship between Plaintiffs and Defendant.

36. Each of the parties respectively owned 1/3 of RR as joint members pursuant to Minnesota Statute § 322C.0409, which states in relevant part:

> The duty of loyalty of a member in a member-managed limited liability company includes the duties: (1) to account to the company and to hold as trustee for it any property, profit, or benefit derived by the member*:* (i) in the conduct or winding up of the company's activities; (ii) from a use by the member of the company's property; or (iii) from the appropriation of a limited liability company opportunity; (2) to refrain from dealing with the company in the conduct or winding up of the company's activities as or on behalf of a person having an interest adverse to the company; and (3) to refrain from competing with the company in the conduct of the company's activities before the dissolution of the company.

37. Pursuant to Minnesota Statute § 322C.0409, an express trust is established between Defendant and RR, requiring the Debtor to hold as trustee for RR and any of its members any property, profit, or benefit derived by the member.

38. Defendant breached his fiduciary duty in his capacity as a trustee pursuant to Minnesota law by selling to RR's customers, purchasing product from RR's vendors, and utilizing RR's plant, trucks, trailers, assets, employees, and equipment without informing RR or obtaining consent.

39. Defendant breached his fiduciary duty in his capacity as a trustee pursuant to Minnesota law because he knew it was improper for CMG to sell to RR's customers, purchase

product from RR's vendors, and utilize RR's plant, trucks, trailers, assets, employees, and equipment without payment to RR.

40. Defendant breached his fiduciary duty in his capacity as a trustee pursuant to Minnesota law because as a result of CMG buying used cooking oil from Third Coast Commodities, LLC and selling the product to Saint Paul Commodities, RR lost the business relationships with both Third Coast Commodities, LLC and Saint Paul Commodities.

41. Defendant breached his fiduciary duty in his capacity as a trustee pursuant to Minnesota law by usurping RR's opportunities by selling to Ceres Solutions Cooperative, Inc., Fairway Dairy & Ingredients, LLC, Kalmbach Feeds, and Poll FARMS.

42. Defendant breached his fiduciary duty in his capacity as a trustee pursuant to Minnesota law by putting CMG logos over RR's logos on grease collection equipment owned by RR in an effort to receive the collected grease, revenue, and benefits therefrom.

43. Defendant breached his fiduciary duty in his capacity as a trustee pursuant to Minnesota law by servicing CMG's 2012 Freightliner Cascadia at Valley Truck Parts and fraudulently billing the service to RR.

44. There was resulting loss because the breaches described above are a direct and proximate result of RR losing customers to CMG.

45. There was resulting loss and damages to RR because Defendant's breach of fiduciary duty was a direct and proximate cause of the value of RR's business decreasing by at least $1,083,509.18.

46. There was resulting loss and damages to Plaintiffs Breza and Tufte as the breach caused Plaintiffs Breza and Tufte to incur $41,921.46 in reasonable and necessary attorneys' fees, costs, and other charges against Defendant.

47.     The requirements of 11 U.S.C. § 523(a)(4) are met, with respect to defalcation while acting in a fiduciary capacity, and as such any debts or liabilities arising from transactions in relation to Defendant's actions on behalf of CMG are nondischargeable.

### Count II
### 11 U.S.C. § (a)(4) Embezzlement

48.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

49.     Pursuant to 11 U.S.C. § 523(a)(4) of the Bankruptcy Code, "a discharge under [the Bankruptcy Code] does not discharge an individual debtor from any debt . . . for . . . embezzlement . . . ."

50.     "A creditor establishes his embezzlement claim 'by showing that (1) he entrusted his property to the debtor, (2) the debtor appropriated the property for a use other than that for which it was entrusted, and (3) the circumstances indicate fraud.'" *In re Sullivan*, 305 BR 809, 825 (2004).

51.     Plaintiffs reasonably and justifiably entrusted their plant, trucks, trailers, assets, employees, equipment, and customers with the Defendant as a member of RR because pursuant to Minnesota Statute § 322C.0409, the Defendant had a duty of loyalty to hold as trustee the property, profit, or benefits derived on behalf of RR.

52.     Plaintiffs relied on Defendant's assurances that he would properly act as a member of RR and fulfill his fiduciary duties to the company and its members.

53.     Defendant misappropriated Plaintiffs' property for his own use by utilizing RR's assets, equipment, plant, and personnel without permission and for the benefit of CMG.

54. Defendant usurped Plaintiffs' business opportunities for his own use by directing CMG to transact business with Ceres Solutions Cooperative, Inc., Fairway Dairy & Ingredients, LLC, Kalmbach Feeds, and Poll FARMS in a fraudulent, secretive, and unwarranted manner.

55. Defendant misappropriated Plaintiffs' finances by servicing CMG's 2012 Freightliner Cascadia at Valley Truck Parts and fraudulently billing the service to RR.

56. The circumstances indicate fraud because Defendant utilized RR's assets, equipment, plant, and personnel without Plaintiffs' knowledge or consent to conduct business as CMG.

57. The circumstances indicate fraud because Defendant placed CMG logos over RR's logos on grease collection equipment that was owned by RR in order to convert RR's Property, deceive and hold out to third-parties that CMG owned property that was the property of RR, and to steal RR's customers, the collected grease, revenue, and benefits therefrom.

58. There was resulting loss and damages to RR because Defendant's embezzlement was a direct and proximate cause of the value of RR's business decreasing by at least $1,083,509.18.

59. There was resulting loss and damages to Plaintiffs Breza and Tufte because Defendant's embezzlement caused Plaintiffs Breza and Tufte to incur $41,921.46 in reasonable and necessary attorneys' fees, costs, and other charges against Defendant.

60. The requirements of 11 U.S.C. § 523(a)(4) are met with respect to embezzlement, and as such any debts or liabilities arising from transactions in relation to Defendant's actions on behalf of CMG are nondischargeable.

### Count III
### 11 U.S.C. § 523(a)(2)(A) Debt for Obtaining Money or Property by False Representation or Actual Fraud

61. Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

62. 11 U.S.C. § 523(a)(2)(A) in relevant part makes nondischargeable "any debt . . . for money [or] property obtained by . . . a false representation, or actual fraud . . . ."

63. A nondischargeabile debt under § 523(a)(2)(A) for false representation requires proof that: "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." *Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1172 (6th Cir. 1996).

64. Defendant wrongfully obtained money because Plaintiffs Breza and Tufte were frequently called upon by Defendant to provide RR with cash and loans but rather than employing the opportunities presented to him on RR's behalf, Defendant shifted those assets to CMG causing substantial and irreparable harm to the Plaintiffs.

65. Defendant intended to deceive Plaintiffs by engaging in an elaborate scheme to deprive and cheat RR out of property because he knew that he did not have permission to use RR's plant, trucks, trailers, assets, and employees without consent or payment.

66. Although he had a legal duty to do so as a member of RR, Defendant never informed Plaintiffs Breza and Tufte of CMG's competition with RR and concealed the fact that he was doing business as CMG.

67. Plaintiffs justifiably relied on Defendant's representations, as he was the individual charged with overseeing the daily field operations of RR and was the "Chief Manager/President."

68. But for Defendant's fraudulent conduct, RR would have had more customers, more revenue, more profit, and its assets would have been sold at a higher price.

69. But for Defendant's conduct, RR would have had more customers, more revenue, more profit, and assets would have been sold for more money.

70. There was resulting loss and damages to RR because Defendant's fraudulent conduct was a direct and proximate cause of the value of RR's business decreasing by at least $1,083,509.18.

71. There was resulting loss and damages to Plaintiffs Breza and Tufte because Defendant's fraudulent conduct caused Plaintiffs Breza and Tufte to incur $41,921.46 in reasonable and necessary attorneys' fees, costs, and other charges against Defendant.

72. The requirements of § 523(a)(2)(A) are met, with respect to money or property obtained by actual fraud or alternatively, false representation. As such any debts or liabilities arising from transactions in relation to Defendant's actions on behalf of CMG are nondischargeable.

WHEREFORE, Plaintiffs respectfully request this Court enter judgment in its favor, determining that Defendant is not entitled to a bankruptcy discharge for any debts or liabilities arising from transactions in relation to Defendant's actions on behalf of CMG to be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(2)(A).

        Respectfully submitted,

        VARNUM LLP

        By: */s/ Brendan G. Best*
            BRENDAN G. BEST  (P66370)

                                        WILLIAM L. THOMPSON  (P80123)
                                        160 W. Fort St., 5th Floor
                                        Detroit, MI  48226
                                        (313) 481-7326
                                        wlthompson@varnumlaw.com

Dated:  January 28, 2021                        *Attorneys for Plaintiffs*